Good morning. May it please the Court. Kara Hartzler, Federal Defenders, on behalf of Mr. Pruett. I'd like to start with the question of timeliness that the Court asked the parties to brief, and then I'll move to the merits of the mandatory guidelines claim unless this Court would like to go another direction. That sounds fine so far. Great. So, first of all, regarding timeliness, as we said in our briefing, the Government affirmatively waived this issue. And I will read the excerpt from the Government response below. It says, the United States agrees that Johnson invalidates the residual clause of 4B1.2A2 for the same reason it posed a problem under ACCA. That, however, is a, I'll put it in quotes, concession as to a question of law, which we don't normally view as a concession. In the briefing, they have, it seems to me, preserved this issue at page 50 and page 7, and also below at ER 52. So just, I think you might use your time better to talk about the, the merits of that issue. Certainly, Your Honor. So I think, going to the merits of the issue, the reason that we believe that Johnson directly applies to 4B1.2A2 is because both provisions share three key factors. First of all, they have an ordinary case analysis that's applied to a risk-based definition under a mandatory sentencing scheme. Those are the three things that are present both in Johnson and here, and that's why Johnson directly applies. So beyond that, it doesn't matter, I'm sorry, I thought you were, no, I'm getting this thing out of the way. Go ahead. So that's really the case. Now, I think one of the issues with timeliness and, and then also the merits is that if you take the government's very, very narrow reading of what the Supreme Court has to decide in order for something to be timely, it actually would cause a lot of problems. And the reason it would is because Look, Counsel, it's not just the government that's read it that way. There are at least two other circuits that have held in similar circumstances that petitions are untimely. So why should we take a different course than those courts have? Well, I think there's also two circuits that have said the opposite. In fact, the So we have to weigh in on one side or the other? That's correct. I would point actually to one of the cases that, the Brown case, there was a very sharp dissent by Judge Gregory. And then in the case that we recently, 28 Jade Moore in the First Circuit, Moore specifically said that they think that Brown and Raybon got it wrong. So I think at the very least, there's a circuit split on this. And so I don't think the case law is as overwhelming as perhaps the government made it out to be. So why is your way the better way to read it? I'm sorry? Why is your way the better way to read the law? The reason it's the better way is because Congress set up the AEDPA statute and the one-year timeliness bar in order to encourage diligent filing. Basically, Congress was trying to get people who have any sort of claim that might relate to a Supreme Court case to file sooner rather than later. Now, what happens is the government's position would encourage the opposite. It would essentially say to largely pro se plaintiffs or pro se petitioners, we don't know if you should file now or if you should wait and see whether another decision comes out later. And so then you've got, it breeds confusion among people who So why doesn't it breed just the opposite? Why doesn't it encourage people to file, to hurry up and file? Well, I think if they hurry up and file, for instance, in this case, if Mr. Pruitt had waited to file, then he risked, I'm sorry, is that what? If he had waited to file? Well, I think He did wait to file. I think the government is saying that he should have waited to file or he needs to wait to file until the Supreme Court especially rules on the mandatory guidelines issue. Or he could have filed right away. He waited almost two decades to bring this claim. That's correct. But at that time, this court's case law precluded a challenge. Except that it's not uncommon for someone, in fact, your office frequently says, you know, this issue has been decided, but we're preserving it for Supreme Court review because we think it's wrong and we're going to try to get cert on it. So I'm not sure that So if another litigant had raised this on direct appeal way back when, and that would be really different, right? Because it would be preserved in the record. If another, I'm sorry, you're on a... If another litigant had raised this on this issue and taken the hit, taken the defeat, but had it in the record that he had tried to appeal, that would be one thing. But that's not the case here. Well, I think there were people who raised it. There was Sorenson in 1990. I think that there was another case in 1991. No, no. I appreciate that, but I'm talking about your litigant. If you have another person, right, one of those folks, that would be a different situation. That person would be dissimilarly situated from your client. For instance, if someone who had the same conviction at the same time as Mr. Pruitt raised this and they had filed within one year. Pre-Booker. Right. Correct. I mean, certainly that would be ideal. I think that person would still be in the same situation that Mr. Pruitt is in now of having to file again. Plus, they would be in a disadvantageous position because now they would be subject to the more stringent standards of filing a second or successive. SOS, right. And I think that's the other practical problem with this is that if a person doesn't know, do I file now or do I file later, and they file diligently, then you're essentially punishing them for if they end up having to file later. Then they're in the SOS box. Because then they're in the SOS box. Exactly. And I think that that's our, I'm sorry. No, so then your position is because of all of that, what the Supreme Court ruled in Johnson is sufficiently creating a new right for these folks to proceed. Exactly. And I think, Your Honor, the reason that we think that Brown and Rabon got it wrong is that they were looking at what is the result of Johnson rather than what is the holding of Johnson. The holding of Johnson is exactly what I said. You have an ordinary case analysis applied to risk-based definition under a mandatory sentencing scheme. That is a recipe for vagueness. And that's what Johnson held. And that's what we have here. And to say that it has to be the exact same provision with the exact same law, I think just so narrowly interprets that that it's going to cause a lot of chaos in terms of when things are timely filed and when you wait. So that's our reasons, both legal and practical, as to why we think that this is timely filed. What about DiMaia? I'm just looking at your time. What about DiMaia? Do we need to wait? What do you think? Your Honor, I think if the court agrees with us on the mandatory guidelines, it can go ahead and just remand and we'll deal with the fallout from DiMaia before the district court. If the court disagrees with us on the mandatory guidelines, I think this court would have to reach the 924C issue. I don't understand that. If we found the petition untimely, why wouldn't we dismiss the appeal? I'm sorry. If you agreed with us on, so Your Honor is saying in terms of timeliness, in terms of the 924C? If that's true, if the court disagrees and says that the 924C is untimely, then yes, it wouldn't have to. I mean, we obviously disagree with that. Right, right. No, I'm just trying to track the decision. If it's timely, I guess I didn't ask a very good question and I confused things. I meant if it's timely, if you get over that hurdle, what about DiMaia and should we wait? Sure. Mr. Pruitt is being released in January. Obviously, we would ask that the court move as expeditiously as possible. Having said that, DiMaia was argued on Monday and we understand that it may not be the best use of judicial resources for the court to make a decision now, so we'll leave that to the court's discretion. Your Honor, I think if the court has no more questions, I'll save the remaining. You may do that. Thank you. Good morning, Your Honors, and may it please the court, Helen Hong on behalf of the United States. The right that Mr. Pruitt has asserted is not the right that was recognized in Johnson. We agree with Ms. Hartzler that what Johnson recognized has two separate components, or the right that Johnson recognized has two separate components. One is the residual clause language, and we'd agree that the residual clause language in the mandatory guidelines subject here is the same as the language that was examined in Johnson. But Johnson required a second component, and they called that the well-recognized requirement that statutes that fix penalties, that statutes that fix sentences, must not be made. That component is missing here, just as it was missing in Beckles. I don't think we have taken as narrow a view of the right announced in Johnson as Ms. Hartzler is suggesting. We're not suggesting that — I'm going to take the hypothetical or example that was examined in Moore, that was the First Circuit case in the second or successive petition context. If there's an ACCA, Jr., another statute that tracks the residual clause language and fixes penalties for different crimes, we'd agree that the right asserted by a petitioner in that circumstance would be asserting the right that was announced in Johnson. What makes Mr. Pruitt's case different, however, is that the Supreme Court has never held that the mandatory guidelines are subject to due process vagueness challenges. The closest it came is in Burns v. United States in 1991, and in that case the Supreme Court assiduously avoided the question. It used it as a canon of constitutional avoidance in order to avoid answering the question at all about whether due process rights require notice in the context of sentencing. Ira Zari in 2008 didn't answer the question either, and that's why we can have decisions like in Ray Griffin and in Ray Sapp, the decisions from the 11th Circuit, that have found that the mandatory guidelines are not subject to Johnson attack in the same way. Had the Supreme Court said that the mandatory guidelines are subject to vagueness attacks, then we couldn't have the decisions like we did in Griffin and Sapp. But why aren't the mandatory guidelines like these statutory provisions? And if we do decide that Beckles forecloses, you know, the argument here that his guideline sentence was unconstitutional, will there ever be a defendant who can raise this issue? If the Supreme Court answers the question which Justice Sotomayor said was left open in Beckles, which is whether the mandatory guidelines are sufficiently mandatory in order to operate like a statute as opposed to more discretionary like the advisory guidelines in Beckles, then a petitioner could invoke a new rule. But counsel, that's not what Judge McGee is asking. She's asking who would ever be able to raise that? Who's going to ever be able to get to the question? Why would the Supreme Court have a very earth-shattering decision? It could arise in circumstances, for example, if there was a cert petition taken in this case. There could be other circumstances where the court would deny relief in the mandatory guidelines context where it could go up to the Supreme Court. What would that circumstance be, counsel? It's going to be timely. How's that ever going to get aired? Oh, on the merits? I think that's what Judge McGee is asking. Well, this individual, I mean, they're running out of time. I mean, people, he served 290 some odd months, and he's going to get released in January. And then, you know, so when he was sentenced close to when the mandatory nature of the guidelines changed, I just, these folks, their window is closing rapidly. And I'm just trying to figure out how do they ever get relief if not now? Right. And they could have obtained relief, as Your Honors suggested, by directly appealing in 1996. There was nothing that foreclosed this challenge. But if somebody did and preserved it because they raised it, then they're in the SOS box. That's opposing counsel's response. So what is your response to that? Well, as we've seen in this context, if a petitioner can raise a right that relies on a new rule that was established by the Supreme Court, then the SOS box doesn't apply. Right? So under 2255H, there are instances in which individuals can invoke newly recognized rights by the Supreme Court. So it's really what I think, if I understand your argument correctly, you're saying that the problem is the same for the petitioner who raised it and lost as for the petitioner who never raised it, because for both of them, they have to be able to point to a new rule of constitutional law established by the Supreme Court. And so if they do, their petition is heard. If they don't, it's not, in both situations. That's correct, Your Honor. In both instances, they have to be able to point to the Supreme Court's creation of a new right. And in this instance, the Supreme Court has not created that new right because we know that from Justice Sotomayor's concurrence that expressly indicated that the question was left open. And we also know it from this Court's jurisprudence and other circuits' jurisprudence that questioned whether mandatory guidelines were subject to vagueness concerns at all. I'd point this Court to its decision in 1997 in Linda Johnson, which acknowledged that unconstitutional vagueness challenges have been questioned as theoretically unsound. Had the Supreme Court decided that mandatory guidelines were subject to vagueness challenges, this Court could not have said that, in the same way that the Eighth Circuit in United States v. Wivel categorically rejected vagueness challenges to the mandatory guidelines. That's why Mr. Pruitt can't invoke the first feature of Johnson, which is that there must be a statute that fixes a sentence. The mandatory guidelines in this circumstance didn't operate in that way. And I just posit one sort of hypothetical that shows why, in 1996, if someone was truly found to be a career offender because of a vague application of the residual clause to a crime that didn't fit within the heartland of career offender offenses, then the Court could have departed. This Court in the Ninth Circuit provided for proportionality departures when there were guidelines increases in many instances, including in the career guideline or career offender, excuse me, context. And so truly it's in those non-heartland cases where the discretion would have been greatest for those individuals who would have had the due process concerns. Mr. Pruitt was not that person. Kagan. What do you mean, that the Court could have departed? O'Connell. So at the time — Kagan. Because, I mean, he was sentenced under the mandatory. Am I missing something here? Yes. So there was koon discretion for district courts to depart even under what's called the mandatory guideline scheme. And this Court en banc in United States v. Sanchez-Rodriguez in 1998 expressly recognized that there could be proportionality departures so that if someone's underlying criminal offense didn't match what the heartland of offenses should have been, that the Court could have departed downward in precisely that circumstance. So if a person was a career offender, for example, because they had two prior convictions for participating in a protest or a riot — I'm just making up this as an example — but the district court decided, you know, those are technically crimes of violence, but those are not the heartland of cases that we see in the career offender context, that district court would have been within its discretion to depart downward and sentence outside of what was otherwise the mandatory guidelines range. And that's what we saw in United States v. Sanchez-Rodriguez. That's what this Court did pre-Booker in United States v. Reyes, where there was a departure for a career offender whose two prior convictions were seen as minor. So really, in the context of the career offender guideline, the individuals who could potentially claim vagueness were precisely the individuals who could have sought departures, meaning that the guidelines weren't fixing the sentence in the way that Johnson demands for it to be the right asserted here. For those reasons, we would agree that Mr. Pruitt has not timely filed his petition in this case. If the Court would like, I can turn for a moment to the commentary and whether the commentary provides a sufficient hook for Mr. Pruitt's robbery conviction to be a crime of violence as well. But if the Court has no other questions at this point, the United States would submit. Well, on DiMaia, on the 924C, do we wait? This Court has deferred submission in at least four cases that predate this one. So Begay is the one that comes to mind most. Gaitan is another one. And there are a few other cases that recently they have deferred submission on in order to wait DiMaia. I think in this case, notwithstanding Mr. Pruitt's imminent release in January, that waiting makes sense. The case won't be moot. There's plenty of case law that suggests that release from custody doesn't moot the case that would deprive this Court of jurisdiction to entertain the 924C, even if we were to wait until after January. Why is that so, where the conviction itself is not in question as distinct from the sentence? The cases that I have seen have suggested that it's not moot when an individual is released, as long as they were in custody at some point for the purposes of the 2255, that the case remains alive even if the person is released from custody. Okay. I would note, too, in this case that Mr. Pruitt was also sentenced to a term of supervised release, a five-year term of supervised release. Thank you. Thank you, Your Honors. I'd like to make three quick points. But first, Judge Graber, if it's helpful, on the mootness issue, this Court actually held just last month in a case called USVDM that if a person is still on supervised release, it's not moot. I hadn't thought about the supervised release. So I think that that probably answers the question. So the three quick points that I'd like to get to. First of all, the one that Ms. Hong ended with in terms of departures, the government made this exact argument in Booker. And Booker said, no, that's not good enough. Especially what Booker specifically said is, departures are not available in every case and, in fact, are unavailable in most. And because of this, the availability of a departure in specified circumstances does not avoid the constitutional issue. So there's nothing specifically different here than in Booker. And as the government's own statistics show, the departures were not available in the majority of cases when Mr. Pruitt was being sentenced. So the same argument that failed in Booker also fails here in terms of departures. My second point is about the issue that counsel raised about the whole idea that the Supreme Court has never found the guidelines to be void for vagueness. That is true, but Beckles did everything but. If you look at Beckles, they use the word advisory, discretionary, discretion over 40 times. They went out of their way to specifically not only carve out the advisory guidelines, but also to lump the mandatory guidelines in with statutes. And that's why we believe that Johnson directly controls here, because it's not about whether it's a statute or a guideline. It's about whether it's mandatory or discretionary. And the language in Booker, I'm sorry, in Beckles, we believe, says that very plainly. And I think the Supreme Court wisely said this is not a mandatory guidelines case. We don't want to decide an issue that is not before us. And that's why they didn't go the step further and say the mandatory guidelines are also void for vagueness. And my final point is I think that Judge Murhia's concern is exactly on point. If we take this narrow reading of timeliness, who is going to be able to actually get to the Supreme Court? I think that's a huge problem, because obviously there's not going to be anybody who can point to a controlling Supreme Court case. I mean, I think that's the issue. It isn't really the way the system is set up. If there's not a new rule of constitutional law that's applicable, then nobody can challenge it. But that's the sort of substantive policy choice that's made by Congress in this area. So regardless of whether the person raised the issue or didn't, the pivotal question seems to me to be the same, which is did the Supreme Court decide the constitutional issue or not? And it seems it rides on that. And your point is how are they going to get it squared teed up? Exactly. Exactly. And that's the rub, right? Exactly. And I'm not sure what the answer is, but it seems to me that's the problem. I absolutely agree. Hence your attempt to extrapolate, if I can use that word from Johnson. Exactly. And so I think when the court is confronted with a situation where there's a circuit split on this issue, the court should err in favor of construing this a little more broadly to say we want to at least give people a shot to get to the Supreme Court so that the Supreme Court can weigh in on this. And I'll leave it at that. Thank you, counsel. Thank you. This just argued as submitted, and we appreciate very much the thoughtful arguments from both of you. They've been very helpful. Thank you.
judges: Graber, Murguia, Christen